James P. Buesing (Arizona Bar No. 022404)
Buesing Law Office, PLLC
20403 N. Lake Pleasant Rd., #117-474
Peoria, AZ 85382
602-902-2564 (P)
602-753-3019 (F)
James@BuesingLaw.com
*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>Parris Frazier,<br><br>　　　　　Defendant. | 2:15-cr-00924-PHX-GMS-1<br><br>**DEFENDANT'S**<br><br>**SENTENCING MEMORANDUM**<br><br>(First Request) |

DEFENDANT, Parris Frazier, by and through undersigned counsel, hereby moves this Honorable Court for a reasonable sentence, less than recommended in the Presentence Report, and submits this sentencing memorandum. Mr. Frazier pled guilty to Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(a)(i). Sentencing is scheduled before this Court on July 18, 2016. Mr. Frazier requests that this Court consider the unique character, background and circumstances presented in this case, and as such, sentence him to a term less than the Presentence Report recommends.

**I. Legal Basis**

Pursuant to 18 U.S.C. §3553, the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with" the following purposes:

　　(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

　　(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In *United States v. Booker*,1 the United States Supreme Court decided that the Constitution mandated that the Sentencing Guidelines are merely advisory. Subsequent decisions by the Supreme Court2 have made it clear that after calculating and considering the appropriate range under the Sentencing Guidelines, the Court is free to impose a sentence consistent with the factors set forth in 18 U.S.C. §3553 but outside the strictures of the Guidelines.

## II.     Facts of the Case

The facts, as presented in the Presentence Report, in this matter are derived from the content of recorded phone calls and in-person conversations between Mr. Fraizer and an undercover FBI agent, and from Facebook posts of Mr. Frazier.

Mr. Frazier was contacted by the undercover agent, Carlos, after Mr. Frazier provided his information to Border Patrol Agents in January 2015, as noted in paragraph 7 of the Presentence Report. *See* Presentence Report for Mr. Frazier, paragraph 7. Mr. Frazier and his companions were patrolling the area as "Patriots" and were interested in curtailing border violations. This prompted them to talk with Border Patrol agents about what they could do to help. Thus, Border Patrol provided this to the FBI, who in turn, had the undercover officer reach out to Mr. Frazer and describe that he worked for the cartel and was involved in the shipment of money and drugs between Mexico and the United States. This prompted Mr. Frazier to inquire about the ability to steal money. During the course of the contact with the undercover, Mr. Frazier exaggerated quite a bit to seem "legitimate" in his ability to engage in actions contrary to the cartel.

The remainder of the case and investigation, as Presentence Report, is fairly accurate.

---

1 543 U.S. 220, 125 S.Ct. 738 (2005).

2 *See Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007); *Gall v. United States*, 552 U.S 38, 128 S. Ct. 586 (2007), and *Kimbrough v. United States,* 552 U.S. 85, 128 S.Ct. 558 (2007).

However, it should be pointed out, that when Mr. Frazier and his companions were arrested, they were in the home of Michelle Henson, Mr. Frazier's girlfriend, where Mr. Frazier had been living. They owned, between them, a number of firearms that were kept in the home and were not used in the commission of the instant offense. So, the assertion that they were heavily armed during the commission of the offense at the warehouse does not included the many firearms that were kept inside the home.

### III.     Defendant's Background

In addition to the characteristics and biographical information noted in the Presentence Report and the comments of the letters that have been provided to the parties and the Court, we provide the following information regarding Mr. Frazier.

Mr. Fraizer was raised by his father, who instilled hard-working, middle class values in his parenting style. Mr. Frazier's father was a truck driver, which caused Mr. Frazier to move a number of times. These frequent changes resulted in Mr. Frazier having a restless sense, identifying with and valuing those who were in his family, because they were the constant figures in his life, rather than the friends that he may have meet in these various areas that he lived. In addition to his moving, Mr. Frazier was diagnosed at a young age with Attention Deficit Disorder, which further contributed to Mr. Frazier's restless nature.

When he was able, Mr. Frazier enlisted in the military, but was discharged after one year, in part, because of medical reasons. His inability to serve his Country in the military was upsetting to Mr. Frazier as he values the United Sates and what it represents to him.

Mr. Frazier, because of his background and childhood, developed a very conservative social and political outlook. Given the area that he lived, and because of the social issues that Mr. Parris saw, and due to the devastating loss of his best friend, his father, in 2013, Mr. Frazier began to become more involved with "Patriotic" circles of individuals. These groups of people, who identified as "Patriots", were like-minded, opinionated, and often times did things like patrol the border as a group, met and discussed issues that they felt were negatively impacting the Country. Many of their concerns related to their feelings that illegal activities at the United States/Mexico border, what they saw as radical Islam, and Governments inability to adequately address these perceived issues were all threatening the American way of life. These

concerns, anger and thoughts permeated their actions as a group and discussions, both in-person and on social networks.

These groups appealed to Mr. Frazier's nature: his need to do something (his restless nature); his political and social beliefs; and also filling a void left by his father's passing.

Mr. Frazier does not have a criminal history to speak of. He does not recall the arrests that are listed in the Presentence report for 1983 and 1985 in Whittier, California, and believes that they may be a mistake. The other events of 1997 and 2005 in Apache Junction, Arizona were dismissed. So, this event represents Mr. Frazier's first criminal conviction, as a 52-year old man.

He has always worked hard and tried to do his best to be a good role model for his son, CJ, and to be a source of support for those close to him.

### III.  Request for Reasonable Sentence

Here, the Presentence Report, recommends a sentence, based on an upward variance, of 8 years (96 months). The defense submits that 96 months is greater than necessary to satisfy the purposes of sentencing for the reason noted in this memorandum.  Defendant submits that a term of 6 years (72 months) is more than sufficient in this case.

Mr. Frazier is a low risk to reoffend.  This conviction represents his first felony conviction, and criminal conviction for that matter.  Offenders with no criminal history points are less likely to recidivate than those with even on criminal history point. *See Recidivism and the "First Offender,"* U.S.S.C. Publication (May 2004), at p. 13 (offenders with zero criminal history points have an 11.7% recidivism rate whereas offenders with one criminal history point have a 22.6% recidivism rate).  His recidivism is further reduced by his absence of drug use (10.8% in CHC I versus 21.9% in CHC I for reported illicit drug users), employment (12.7% versus 20.6%), and being a high school graduate (10.6% versus 21.3%). *See id*.  In addition, Mr. Frazier is a dedicated father, which is the greatest motivation for an individual, such as himself, to be a positive and present fixture in the life of his son.

A lengthy sentence to deter Mr. Frazier from future conduct is not needed. In fact, a term of six years for a person in Mr. Frazier's position is considered lengthy in that he has never been incarcerated before, and any time away is compounded by those he is being removed from, his

family. He will be near 60-years old when released. Not to mention the Mr. Frazier has not engaged in conduct like this before.

This event has been especially difficult for Mr. Frazier in that he feels that he has let his son, family and friends down. He now sees that his actions here were especially misguided and careless and feels ashamed at what transpired.

In this same vein, the reason that undersigned counsel points out the fact that the egregious statements listed in the presentence report about Mr. Frazier leading a mercenary lifestyle, threatening to kill witnesses, and having a crew that were professionals were all from the recorded conversations with the undercover officer is because it was all simply puffery. This becomes clear when looking at the statements made to the undercover officer and then looking at the reality of Mr. Frazier's life.

He worked in heating and air conditioning, lead a blue-collar life and came back to Arizona to care for his dying father, was a loving father and friend, who had no criminal convictions. He did not travel out of the State and Country on "jobs" as he represented to the undercover. He did not have a crew of professionals that he worked with.

Here, Mr. Frazier simply got caught up in his role as a "Patriot" and when the undercover reached out to him and represented being part of a cartel and offered an opportunity to steal money, Mr. Frazier got carried away by the situation. He saw an opportunity to take money from those that he saw as profiting from causing harm to his community and Country, while making money to put back into his groups "Patriotic" operations.

As misguided as this reasoning may be, it does not rise to the level of or show a man who was living the life of a mercenary. Especially when these comments are placed in the context of who they were made to and contrasted by the reality of Mr. Frazier's background.

The Presentence Report further points to the comments of Mr. Frazier on Facebook as concerning. The defense would point out the nature of social media and social forums such as Facebook are, sometimes, simply places were individual vent about things they disagree with. It is just another form of social puffery and venting to both like-minded and those opposed to your views.

In the end, Mr. Frazer was absolutely honest with investigators when he was arrested. He and his co-defendants did not raise firearms toward law enforcement. They were placed in a

situation where they were provided with the opportunity to steal from unmanned, unguarded cars located in remote areas, and when they were presented with opposition, law enforcement sent to arrest them, they simply ran. They did not react as professional mercenaries that were ready to "butt heads" with anyone, as presented in the recorded conversations and in the presentence report. They ran home, and when questioned by police, Mr. Frazier fully confessed everything. Again, this shows that everything that Mr. Frazier stated in this conversations with the undercover officer was exaggeration to try to fit into the situation that was presented by the undercover officer. In the end, Mr. Frazer reacted not as an individual who is a professional mercenary or murderer, but as an individual who has no criminal history who was in over his head.

      Mr. Frazer, from the moment that he was arrested until now takes full responsibility for his actions. He looks forward to resolving this matter and trying to put his life back together. If the Court were to entertain our request, Mr. Frazier would get out of prison as 58-year old man. He feels that he will be too old to go back to working in the heating an air conditioning industry. He would like to become a counselor. He has been working while in-custody and intends to explore further opportunities in the Bureau of Prisons avenues that lend to this end. So that he can work with other individuals who are "at risk" to help them learn from his mistakes.

    He respectfully requests a sentence him to a term of six years (72 months), but will accept whatever sentence this Court deems appropriate.

      Respectfully July 10, 2016.

                                        Buesing Law Office, PLLC

                                        By:    /s/James P. Buesing
                                                  /s/James P. Buesing
                                                  Attorney for Defendant

**CERTIFICAT OF SERVICE**

I hereby certify that on the 10th day of July, 2016, I e-mailed and electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

The Office of the Honorable G. Murray Snow
Lisa Jennis, Assistant United States Attorney,

By:_____
   /s/ James P. Buesing